IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE MOORE on behalf of himself and others similarly situated, | : : : | |
| Plaintiff, | : : | Case No. |
| v. | : : : | |
| CLEAR LINK TECHNOLOGIES, LLC and JOHN DOE CORPORATION d/b/a HEALTH CARE SOLUTIONS | : : : : | |
| Defendants. | : : / | |

## CLASS ACTION COMPLAINT

**Preliminary Statement**

1. Plaintiff George Moore ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Defendant Clear Link Technologies, LLC ("Clear Link") began a cold-calling, prerecorded telemarketing campaign to promote its insurance services to persons who had no prior relationship with Clear Link whatsoever (the Telemarketing Campaign).

3. To implement the Telemarketing Campaign, Clear Link hired a vendor John Doe Corporation d/b/a Health Care Solutions.

4. Throughout the Telemarketing Campaign, Clear Link maintained and exercised control over John Doe Corporation's actions on its behalf. As described below, Plaintiff received

these calls despite the fact that his phone numbers are on the National Do Not Call Registry and that he never consented to receive such calls.

5. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action against Defendants on behalf of a proposed nationwide class of other persons who received calls during the Telemarketing Campaign.

6. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

7. Plaintiff George Moore is a resident of Illinois in this District.

8. Defendant Clear Link Technologies, LLC is a Utah limited liability company that has its principal office in Salt Lake City, UT and is registered in this District with a registered agent of Paracorp Inc., 901 S. 2nd St., Suite 201 in Springfield, IL 62704. Defendant Clear Link itself, and through third parties, places telemarketing calls into this District, as it did with the Plaintiff.

9. Defendant John Doe Corporation is a yet unidentified telemarketing vendor of Clear Link that contacted Mr. Moore.

## Jurisdiction & Venue

10. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

11. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff Moore is a resident of this district, which is where he received the illegal telemarketing calls that are the subject of this putative class action lawsuit.

## TCPA Background

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

13. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes." *See* 47 U.S.C. § 227(b)(1)(B).

14. The TCPA provides a private cause of action to persons who receive such calls. *See* 47 U.S.C. § 227(b)(3).

15. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The National Do Not Call Registry

17. Second, § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

18. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

19. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

20. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**Factual Allegations**

<u>Calls to Mr. Moore</u>

21. The Defendants contacted Mr. Moore on two of his telephone numbers.

22. The first number, (630) 699-XXXX, is a residential number registered to a cellular telephone service.

23. The second number, (630) 510-XXXX, is a residential number.

24. Both numbers have been on the National Do Not Call Registry for more than ten years prior to the receipt of the calls at issue.

25. On August 8, 2019, November 12, 2019 and May 6, 2020, Mr. Moore received a pre-recorded telemarketing call from Health Care Solutions for Clear Link.

26. The pre-recorded call began each time by identifying "Health Care Solutions" and then would promote Medicare supplemental insurance.

27. The purpose of these calls was to generate sales for Clear Link.

28. The Plaintiff was not interested in the services being offered and attempted to ignore the calls.

29. However, the calls continued.

30. On May 12, 2020, the Plaintiff received another call from Health Care Solutions.

31. In order to confirm the identity of the calling party, the Plaintiff listened to the telemarketing pitch and provided unique identifying information.

32. The Plaintiff was transferred to Adam Hehl, an insurance agent licensed in the State of Illinois with Clear Link.

33. Mr. Hehl identified his company as Clear Link and promoted Medicare supplemental insurance.

34. On May 15, 2020, the Plaintiff contacted Clear Link and reconfirmed that Clear Link was the company whose services were being promoted.

35. Plaintiff and all members of the classes, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were subjected to annoying and harassing calls that constitute a nuisance. The calls also occupied Plaintiff's telephone lines from legitimate communication and wasted his time.

36. Plaintiff has not provided Defendants with his prior express written consent to place telemarketing calls to him.

### Clear Link's Liability for the Telemarketing Calls

37. The Federal Communication Commission ("FCC") is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

38. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

39. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

40. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Clear Link may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside

6

>the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

41. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

42. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

43. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

>[A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 CC Rcd at 6592 (¶ 46).

7

44. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

45. After receiving the pre-recorded telemarketing calls, Plaintiff contacted Clear Link who informed him that he was called by a vendor of theirs.

46. Clear Link is legally responsible for ensuring that the company that made the calls complied with the TCPA, even if Clear Link did not itself make the calls.

47. Clear Link knowingly and actively accepted business that originated through the illegal telemarketing calls from the company that made the calls.

48. In fact, Clear Link accepted the business from the illegal calls, even though it had previously received complaints alleging that the third parties working on its behalf were violating the TCPA.

49. By hiring a company to make calls on its behalf, Clear Link "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

50. Throughout the Telemarketing Campaign, Clear Link maintained control and gave interim instructions to its vendors regarding the volume of calls to be made and the states they were permitted to call.

51. Clear Link had day-to-day control over each of the vendors' actions on its behalf, including the ability to prohibit them from using pre-recorded messages to contact potential customers of Clear Link.

52. Clear Link also instructed its vendors to transfer the called parties to Clear Link to complete the process of signing a customer up for their service. Moreover, Clear Link had absolute control over whether, and under what circumstances, it would accept a customer.

## Class Action Allegations

53. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings Counts One and Two set forth below on behalf of the following classes of persons or entities similarly situated throughout the United States.

54. The classes of persons Plaintiff proposes to represent are tentatively defined as:

DO NOT CALL LIST CLASS

> All persons within the United States to whom: (a) Defendants or a third party acting on their behalf, made at least two telephone solicitation calls during a 12-month period; (b) promoting insurance services (c) to a residential landline or cellular telephone number registered on the National Do Not Call Registry for at least 30 days prior to the first call; (d) on or after four years from the filing of the Complaint.

PRERECORDED CLASS

> All persons within the United States to whom: (a) Defendants or a third party acting on their behalf, made one or more telephone calls promoting insurance services; (b) to a residential landline or cellular telephone number; (c) through the use of a prerecorded voice; and (d) on or after four years from the filing of the Complaint.

55. Excluded from the classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

56. The classes as defined above are identifiable through phone records and phone number databases.

57. The potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

58. Plaintiff is a member of the classes.

59. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

 a. Whether Defendants violated the TCPA by calling individuals on the National Do Not Call Registry;

 b. Whether Defendants' calls are solicitations;

 c. Whether Defendants made calls using a prerecorded voice;

 d. Whether Defendant placed calls without obtaining the recipients' prior express written consent for the call;

 e. Whether the Plaintiff and the class members are entitled to statutory damages as a result of Defendants' actions.

 f. Whether Clear Link is vicariously liable for the calls.

60. Plaintiff's claims are typical of the claims of class members.

61. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and is represented by counsel skilled and experienced in class actions, including TCPA class actions.

62. The actions of the Defendants are generally applicable to the classes as a whole and to Plaintiff.

63. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

64. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## Legal Claims

### Count One
### Violations of the TCPA's Do Not Call Provisions

65. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

66. Defendants violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) by initiating, or having one of their vendors initiate on their behalf, multiple solicitation calls within a 12-month period to residential telephone numbers despite their registration on the National Do Not Call Registry and without signed, written prior express invitation or permission,

67. Defendants' violations were negligent and/or willful.

### Count Two
### Violation of the TCPA's Automated Telemarketing Call Provisions

68. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

69. Defendants violated 47 U.S.C. § 227(b)(1)(A), 47 U.S.C. § 227(b)(1)(B), 47 C.F.R. § 64.1200(a)(2), and 47 C.F.R. § 64.1200(a)(3) by initiating, or having one of their vendors initiate on their behalf, a call that includes an advertisement or constitutes telemarketing

to the Plaintiff's cellular telephone number using a pre-recorded voice without his prior express written consent.

70. Defendants' violations were negligent and/or willful.

### **Relief Sought**

For himself and all Classes members, Plaintiff requests the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendants and/or their affiliates, agents, and/or other related entities, as provided by law, from using pre-recorded messages;

F. An award to Plaintiff and the Classes of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By his attorneys

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com